ORIGINAL

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FAXED

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

YAYYO, INC., RAMY EL-BATRAWI, JONATHAN ROSEN,
(Additional Parties Attachment form is attached)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

IVAN RUNG, Individually and on Behalf of All Others Similarly
Situated

| FOR COURT USE ONLY |
| *(SOLO PARA USO DE LA CORTE)* |
| **FILED** |
| Superior Court of California |
| County of Los Angeles |
| JUL 22 2020 |
| Sherri R. Carter, Executive Officer/Clerk of Court |
| By ___Tanya Herrera___ Deputy |
| Tanya Herrera |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO!* Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (*www.sucorte.ca.gov*), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (*www.lawhelpcalifornia.org*), en el Centro de Ayuda de las Cortes de California, (*www.sucorte.ca.gov*) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Superior Court of Los Angeles County<br><br>111 North Hill Street<br>Los Angeles, CA 90012 | **CASE NUMBER:**<br>*(Número del Caso):*<br>**20STCV27876** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
James I. Jaconette, Robbins Geller, 655 West Broadway, Ste. 1900, San Diego, CA 92101  619/231-1058

| DATE:<br>*(Fecha)* JUL 2 2 2020 | SHERRI R. CARTER | Clerk, by<br>*(Secretario)* | ___Tanya Herrera___ | , Deputy<br>*(Adjunto)* |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*  Tanya Herrera

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☒ on behalf of *(specify)*: Westpark Capital, Inc.

under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
       ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|

**SUM-200(A)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Rung v. YayYo, Inc., et al. | |

## INSTRUCTIONS FOR USE

➜ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

➜ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff    ☑ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

KEVIN F. PICKARD, HARBANT S. SIDHU, JEFFREY J. GUZY, CHRISTOPHER MIGLINO, PAUL RICHTER, AEGIS CAPITAL CORP., WESTPARK CAPITAL, INC. and DOES 1-25 inclusive

Page ___1___ of ___1___

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

ORIGINAL

FAXED

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

James I. Jaconette (179565)
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
TELEPHONE NO.: 619/231-1058    FAX NO.: 619/231-7423
ATTORNEY FOR (Name): Plaintiff Ivan Rung

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
Rung v. YayYo, Inc., et al.

**FILED**
Superior Court of California
County of Los Angeles

**JUL 22 2020**

Sherri R. Carter, Executive Officer/Clerk of Court
By _Janna Herrera_ Deputy
Tanya Herrera

CASE: **20STCV27876**

| CIVIL CASE COVER SHEET | | Complex Case Designation | | |
|---|---|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: | |
| | | | DEPT: | |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☑ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☑ is ☐ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☑ Large number of separately represented parties
   b. ☑ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☑ Substantial amount of documentary evidence
   d. ☑ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☑ monetary  b. ☑ nonmonetary; declaratory or injunctive relief  c. ☐ punitive
4. Number of causes of action (specify): Two
5. This case ☑ is ☐ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: July 22, 2020

James I. Jaconette
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or
  toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil
  harassment)* (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer
      or wrongful eviction)*
  Contract/Warranty Breach–Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage *(not provisionally
  complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex
  case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment *(non-
    domestic relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
  above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-
    harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified
  above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**



ORIGINAL

SHORT TITLE: Rung v. YayYo, Inc., et al.   CASE NUMBER: 20STCV27876

**CIVIL CASE COVER SHEET ADDENDUM AND
STATEMENT OF LOCATION
(CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)**

This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| | Applicable Reasons for Choosing Court Filing Location (Column C) |
|---|---|

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 1, 11 |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 1 of 4

| SHORT TITLE Rung v. YayYo, Inc., et al. | CASE NUMBER |
|---|---|

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation          Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032  Quiet Title | 2, 6 |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer- Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**

| SHORT TITLE: Rung v. YayYo, Inc., et al. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus<br>☐ A6152  Writ - Mandamus on Limited Court Case Matter<br>☐ A6153  Writ – Other Limited Court Case Review | 2, 8<br>2<br>2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☑ A6035  Securities Litigation Case | ①, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment<br>☐ A6160  Abstract of Judgment<br>☐ A6107  Confession of Judgment (non-domestic relations)<br>☐ A6140  Administrative Agency Award (not unpaid taxes)<br>☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112  Other Enforcement of Judgment Case | 2, 5, 11<br>2, 6<br>2, 9<br>2, 8<br>2, 8<br>2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only<br>☐ A6040  Injunctive Relief Only (not domestic/harassment)<br>☐ A6011  Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8<br>2, 8<br>1, 2, 8<br>1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment<br>☐ A6123  Workplace Harassment<br>☐ A6124  Elder/Dependent Adult Abuse Case<br>☐ A6190  Election Contest<br>☐ A6110  Petition for Change of Name/Change of Gender<br>☐ A6170  Petition for Relief from Late Claim Law<br>☐ A6100  Other Civil Petition | 2, 3, 9<br>2, 3, 9<br>2, 3, 9<br>2<br>2, 7<br>2, 3, 8<br>2, 9 |

**CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION**

| SHORT TITLE:   Rung v. YayYo, Inc., et al. | CASE NUMBER: |
|---|---|

**Step 4:** **Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the
type of action that you have selected.  Enter the address which is the basis for the filing location, including zip code.
(No address required for class action cases).

| REASON: <br><br> ☑ 1. ☐ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11. | ADDRESS: <br> 433 North Camden Drive, Suite 600 |
|---|---|
| CITY: <br> Beverly Hills | STATE: <br> CA | ZIP CODE: <br> 92101 | |

**Step 5:** **Certification of Assignment:** I certify that this case is properly filed in the ___Central___ District of
the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: July 22, 2020

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY
COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev.
   02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a
   minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum
   must be served along with the summons and complaint, or other initiating pleading in the case.

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:
Spring Street Courthouse
312 North Spring Street, Los Angeles, CA 90012

**NOTICE OF CASE ASSIGNMENT**

**UNLIMITED CIVIL CASE**

Your case is assigned for all purposes to the judicial officer indicated below.

Reserved for Clerk's File Stamp

**FILED**
Superior Court of California
County of Los Angeles

**07/22/2020**

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____ T. Herrera _____ Deputy

CASE NUMBER:
20STCV27876

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✓ | William F. Highberger | 10 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on 07/24/2020
  (Date)

Sherri R. Carter, Executive Officer / Clerk of Court

By T. Herrera _____, Deputy Clerk

LACIV 190 (Rev 6/18)
LASC Approved 05/06

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

ORIGINAL

1   ROBBINS GELLER RUDMAN
        & DOWD LLP
2   JAMES I. JACONETTE (179565)
    655 West Broadway, Suite 1900
3   San Diego, CA 92101
    Telephone: 619/231-1058
4   619/231-7423 (fax)
    jamesj@rgrdlaw.com
5       – and –
    SAMUEL H. RUDMAN
6   MARY K. BLASY (211262)
    58 South Service Road, Suite 200
7   Melville, New York 11747
    Telephone: 631/367-7100
8   631/367-1173 (fax)
    srudman@rgrdlaw.com
9   mblasy@rgrdlaw.com

10  Attorneys for Plaintiff

**FILED**
Superior Court of California
County of Los Angeles

**JUL 22 2020**

Sherri R. Carter, Executive Officer/Clerk of Court
By_____Tanya Herrera_____ Deputy
                Tanya Herrera

11          SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                        COUNTY OF LOS ANGELES

13  IVAN RUNG, Individually and on Behalf of       )   Case No.   **20STCV27876**
    All Others Similarly Situated,                 )
14                                                 )   CLASS ACTION
                          Plaintiff,               )
15                                                 )   COMPLAINT FOR VIOLATION OF THE
             vs.                                   )   SECURITIES ACT OF 1933
16                                                 )
    YAYYO, INC.,                                   )
17  RAMY EL-BATRAWI,                               )
    JONATHAN ROSEN,                                )
18  KEVIN F. PICKARD,                              )
    HARBANT S. SIDHU,                              )
19  JEFFREY J. GUZY,                               )
    CHRISTOPHER MIGLINO,                           )
20  PAUL RICHTER,                                  )
    AEGIS CAPITAL CORP.,                           )
21  WESTPARK CAPITAL, INC. and                     )
    DOES 1-25 inclusive.                           )
22                                                 )
                          Defendants.              )
23  _____  )   **DEMAND FOR JURY TRIAL**

24

25

26

27

28

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1    Plaintiff Ivan Rung ("plaintiff"), individually and on behalf of all others similarly situated, by
2    plaintiff's undersigned attorneys, for plaintiff's complaint against defendants, alleges the following
3    based upon personal knowledge as to plaintiff and plaintiff's own acts, and upon information and belief
4    as to all other matters based on the investigation conducted by and through plaintiff's attorneys, which
5    included, among other things, a review of YayYo, Inc.'s ("YayYo" or the "Company") press releases,
6    Securities and Exchange Commission ("SEC") filings, analyst reports, media reports and other publicly
7    disclosed reports and information about defendants, as well as pleadings filed in the various legal
8    actions involving YayYo detailed herein.  Plaintiff believes that substantial evidentiary support will
9    exist for the allegations set forth herein after a reasonable opportunity for discovery.

10                                   **NATURE OF THE ACTION**

11          1.       This is a securities class action on behalf of all purchasers of the common stock of
12   YayYo pursuant to the Registration Statement and Prospectus issued in connection with YayYo's
13   November 14, 2019 initial public stock offering (the "IPO"), seeking to pursue strict liability remedies
14   under the Securities Act of 1933 (the "1933 Act").

15                                   **JURISDICTION AND VENUE**

16          2.       The claims alleged herein arise under §§11 and 15 of the 1933 Act. 15 U.S.C. §§77k and
17   77o.  Jurisdiction is conferred by §22 of the 1933 Act and venue is proper pursuant to §22 of the 1933
18   Act.  This case is not subject to removal to federal court.

19          3.       The violations of law complained of herein occurred in this State and in large part this
20   County, including the dissemination of the materially false and misleading statements complained of
21   herein into this State and County.  YayYo is headquartered in Beverly Hills, California, and defendants
22   Ramy El-Batrawi, Jonathan Rosen, Harbant S. Sidhu and Christopher Miglino are citizens of California
23   and, upon information and belief, are residents of the California counties of, respectively, Los Angeles,
24   Orange, Los Angeles and Los Angeles.  Each of the Underwriter Defendants (defined below) is either
25   headquartered in Los Angeles County or maintains substantial and continuous contacts with California
26   by conducting significant investment banking operations in this County and throughout this State.
27
28

## PARTIES

4.     Plaintiff Ivan Rung purchased YayYo common stock traceable to the IPO and was damaged thereby.

5.     Defendant YayYo is a Beverly Hills, California-based company that claimed at the time of its IPO to be engaged in "bridg[ing] the gap between rideshare drivers needing a suitable vehicle and rideshare companies that depend on attracting and keeping drivers with quality vehicles," that "YayYo uniquely supports drivers in both the higher and lower economic categories with innovative policies and programs," and that YayYo was "seek[ing] to become the preeminent provider of rental vehicles to drivers in the ever-expanding ridesharing economy."

6.     Defendant Ramy El-Batrawi ("El-Batrawi") founded YayYo and served as its Chief Executive Officer ("CEO") from the Company's inception until October 4, 2018, then as Acting CEO from November 17, 2018 to February 1, 2019, and as a member of the YayYo Board of Directors (the "Board") between June 2016 and September 2019. Due to his checkered past, at the insistence of the NASDAQ defendant El-Batrawi resigned all positons at YayYo in September 2019 so that the Company could be taken public. On February 28, 2020, defendant El-Batrawi purports to have been reappointed CEO of YayYo and a member of its Board.

7.     Defendant Jonathan Rosen ("Rosen") was at the time of the time of the IPO YayYo's CEO, having assumed that roll in February 2019 in preparation for the IPO.

8.     Defendant Kevin F. Pickard ("Pickard") was at the time of the IPO YayYo's Chief Financial Officer, Secretary and a member of its Board.

9.     Defendants Jeffrey J. Guzy ("Guzy"), Christopher Miglino ("Miglino"), Harbant S. Sidhu ("Sidhu") and Paul Richter ("Richter") were at the time of the IPO members of the YayYo Board.

10.     The defendants referenced above in ¶¶6-9 are referred to herein as the "Individual Defendants." Defendants Rosen, Pickard, Guzy and Sidhu each signed the Registration Statement (defined below). The defendants referenced above in ¶¶6-8 were the executives of YayYo at the time of the IPO, participated in the roadshow to market the IPO with the Underwriter Defendants, and are sometimes referred to herein as the "Executive Defendants."

1        11.     Defendants WestPark Capital, Inc., based in Los Angeles, California ("WestPark"), and

2    Aegis Capital Corp., based in New York, New York ("Aegis"), are investment banking firms that acted

3    as underwriters for the IPO, helping to draft and disseminate the offering documents (the "Underwriter

4    Defendants"). Pursuant to the 1933 Act, the Underwriter Defendants are liable for the statements in the

5    Registration Statement as follows:

6               (a)     The Underwriter Defendants are investment banking houses which specialize,

7    *inter alia*, in underwriting public offerings of securities. They served as the underwriters of the IPO and

8    shared $840,000 in fees collectively. The Underwriter Defendants determined that in return for their

9    share of the IPO proceeds, they were willing to merchandize YayYo stock in the IPO. The Underwriter

10   Defendants arranged a multi-city roadshow prior to the IPO during which they and the Executive

11   Defendants met with potential investors and presented highly favorable information about the

12   Company, its operations, and its financial prospects.

13              (b)     Representatives of the Underwriter Defendants also assisted YayYo and the

14   Individual Defendants in planning the IPO, and purportedly conducted an adequate and reasonable

15   investigation into the business and operations of YayYo, an undertaking known as a "due diligence"

16   investigation. The due diligence investigation was required of the Underwriter Defendants in order to

17   engage in the IPO. During the course of their "due diligence," the Underwriter Defendants had

18   continual access to confidential corporate information concerning YayYo's operations and financial

19   prospects.

20              (c)     In addition to availing themselves of virtually unbridled access to internal

21   corporate documents, agents of the Underwriter Defendants, including their counsel, met with YayYo's

22   management and top executives and engaged in "drafting sessions" during at least May 2019. During

23   these sessions, understandings were reached as to: (i) the strategy to best accomplish the IPO; (ii) the

24   terms of the IPO, including the price at which YayYo stock would be sold; (iii) the language to be used

25   in the Registration Statement; (iv) what disclosures about YayYo would be made in the Registration

26   Statement; and (v) what responses would be made to the SEC in connection with its review of the

27   Registration Statement. As a result of those constant contacts and communications between the

28

1   Underwriter Defendants' representatives and YayYo's management and top executives, the Underwriter

2   Defendants knew, or should have known, of YayYo's existing problems as detailed herein.

3          (d)     The Underwriter Defendants caused the Registration Statement to be filed with

4   the SEC and declared effective in connection with offers and sales thereof, including to plaintiff and the

5   Class.

6       12.     The true names and capacities of defendants sued herein under California Code of Civil

7   Procedure §474 as Does 1 through 25, inclusive, are presently not known to plaintiff, who therefore

8   sues these defendants by such fictitious names. Plaintiff will seek to amend this Complaint and include

9   these Doe defendants' true names and capacities when they are ascertained. Each of the fictitiously

10   named defendants is responsible in some manner for the conduct alleged herein and for the injuries

11   suffered by the Class (as defined below).

12                   **SUBSTANTIVE ALLEGATIONS**[1]

13       13.     On or about June 21, 2016, defendant El-Batrawi incorporated YayYo in Delaware. The

14   Company then rented cars to Uber and Lyft drivers.

15       14.     Defendant El-Batrawi has a checkered past. On April 13, 2006, defendant El-Batrawi

16   was named, along with others officers, directors and/or associates of Genesis Intermedia, Inc.

17   ("Genesis"), as a defendant in an SEC enforcement action. In the complaint filed in *SEC v. El-Batrawi,*

18   *et al.,* No 2:06-cv-02247-CAS(VBKx) (C.D. Cal.), the SEC charged defendant El-Batrawi with

19   violations of §17(a) of the 1933 Act and §10(b) of the Securities Exchange Act of 1934 in connection

20   with a stock loan and manipulation scheme. The SEC enforcement action alleged, among other things,

21   that defendants had violated antifraud provisions of federal securities laws by orchestrating a scheme to

22   manipulate the stock price of Genesis, a now-defunct public company that was based in Van Nuys,

23   California. On April 1, 2010, defendant El-Batrawi settled the SEC enforcement action by entering into

24   a final judgment by consent with the SEC. In connection with the settlement of the SEC enforcement

25   action charges, the U.S. District Court for the Central District of California entered a consent decree

26   against defendant El-Batrawi, which, among other things, barred him from acting as an officer or

27

28   [1]   All emphasis has been added, unless otherwise noted.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1  director of a public company for a period of five years following the date of entry of the final judgment

2  by consent.

3      15.    As defendants prepared to take YayYo public in the IPO, given defendant El-Batrawi's

4  history of securities law violations, the NASDAQ, where defendants intended to list YayYo shares in

5  connection with the IPO, refused to permit a listing of the Company's shares unless defendant El-

6  Batrawi resigned and relinquished all authority and control over YayYo prior to the effective date of the

7  IPO. Defendant Rosen was hired in February 2019 and by October 2019 had been appointed CEO of

8  YayYo.

9      16.    Meanwhile, on or about April 30, 2018, YayYo filed with the SEC its initial Registration

10  Statement on Form S-1, which, after several amendments in response to comments from the SEC,

11  would later be utilized for the IPO. On or about November 12, 2019, the SEC declared the Registration

12  Statement effective and on or about November 14, 2019, defendant YayYo and the Underwriter

13  Defendants priced the IPO and filed with the SEC the final Prospectus for the IPO, which forms part of

14  the Registration Statement (collectively, the "Registration Statement").

15      17.    The Registration Statement was negligently prepared and, as a result, contained untrue

16  statements of material fact or omitted to state other facts necessary to make the statements made not

17  misleading, and was not prepared in accordance with the rules and regulations governing its

18  preparation.

19      18.    Concerning defendant El-Batrawi's ongoing involvement in the affairs of YayYo, the

20  Registration Statement stated in pertinent part that, "[o]n February 1, 2019, Mr. El-Batrawi resigned

21  from his position as Acting Chief Executive Officer of the Company upon the appointment of Jonathan

22  Rosen as Chief Executive Officer," and that "Mr. El-Batrawi resigned as our director effective as of

23  September 1, 2019."

24      19.    Elsewhere, claiming that defendant Rosen was truly operating independently as YayYo's

25  CEO and was himself then directing the Company's affairs, the Registration Statement stated in

26  pertinent part as follows:

27          We depend on a small number of executive officers and other members of
           management to work effectively as a team, to execute our business strategy and
28          operating business segments, and to manage employees and consultants. Our success

will be dependent on the personal efforts of our Chief Executive Officer, our directors and such other key personnel. Any of our officers or employees can terminate his or her employment relationship at any time, and the loss of the services of such individuals could have a material adverse effect on our business and prospects. *Mr. El-Batrawi, the founder and original Chairman of the Board and original Chief Executive Officer of the Company from its incorporation of the Company, resigned from all positions with the Company as a condition for being approved for listing on The Nasdaq Capital Market.*

20.     Concerning the purported sale of defendant El-Batrawi's equity ownership in YayYo prior to the IPO, the Registration Statement stated in pertinent part as follows:

As a condition to approving the Company's common stock for listing on The Nasdaq Capital Market, X, LLC, an entity that is wholly-owned and controlled by Ramy El-Batrawi, our founder and former Chief Executive Officer and former director, agreed to sell 12,525,000 of its 15,425,000 shares of common stock. *The 12,525,000 shares (the "Private Shares") were sold* pursuant to an exemption from registration under the Securities Act to four existing Company shareholders who qualify as accredited investors (as that term is defined in Securities Act Rule 501(a)). *The Private Shares were sold at $3.00 per share* in exchange for non-recourse, non-interest-bearing promissory notes with maturities ranging from one year to eighteen months. *As a result of the sale, X, LLC's beneficial ownership shall be reduced to 9.9% of the shares outstanding after the completion of this Offering.* We will not receive any proceeds from the sale of the Private Shares. If the offering contemplated by this registration statement is not consummated by January 31, 2020, the parties have agreed to unwind the sale of the Private Shares transaction in compliance with applicable law. Mr. El-Batrawi has also entered into a Voting Trust Agreement (the "Trust") pursuant to which the voting power of all of his remaining 2,900,000 shares of common stock will be controlled by a trustee who will use the voting power of the common stock held in the Trust to vote on all matters presented for a vote of stockholders in the same proportion that the shares of common stock not subject to the Trust voted on such matters.

*            *            *

Mr. El-Batrawi has entered into a Voting Trust Agreement (the "Trust") pursuant to which the voting power of all of his outstanding common stock will be controlled by a trustee who will use the voting power of the common stock held in the Trust to vote on all matters presented for a vote of stockholders in the same proportion that the shares of common stock not subject to the Trust voted on such matters. The Trust shall be irrevocable, and shall terminate upon the earlier of (a) the written agreement of the Company, the trustee and a duly authorized representative of Nasdaq, or (b) the date upon which the Company is not listed on a security exchange controlled by Nasdaq.

*As of the date of this prospectus, the Gray Mars Venus Trust, of which John Gray is the beneficial owner, owns approximately 38.5% of our outstanding shares of common stock. . . .*

In addition to the stock controlled by John Gray, *five other individuals or entities will own 39.3% of our common stock after the completion of this offering. . . .*

*            *            *

**Voting Trust**

Mr. El-Batrawi has entered into a Voting Trust Agreement pursuant to which the voting power of all of his outstanding common stock will be controlled by a trustee who will use the voting power of the common stock held in the Trust to vote on all matters, other than certain extraordinary matters, presented for a vote of stockholders in the same proportion that the shares of common stock not subject to the Trust voted on such matters. Mr. El-Batrawi's entrance into the Voting Trust Agreement is a condition for the Company's approval for listing on The Nasdaq Capital Market.

*The Trust shall be irrevocable, and shall terminate upon the earlier of (a) the written agreement of the Company, the trustee and a duly authorized representative of Nasdaq, or (b) the date upon which the Company is not listed on a security exchange controlled by Nasdaq.*

The trustee, initially one of our directors, Harbant S. Sidhu, shall have discretion to vote the Trust's shares on all extraordinary matters which shall include any merger, consolidation, business combination, share exchange, restructuring, recapitalization or acquisition involving the Company or any similar transaction or the sale, lease, exchange, pledge, mortgage or transfer of all or a material portion of the Company's assets.

\*　　　\*　　　\*

To the best of our knowledge, except as otherwise indicated, *each of the persons named in the table has sole voting and investment power with respect to the shares of our common stock beneficially owned by such person*, except to the extent such power may be shared with a spouse. To our knowledge, none of the shares listed below are held under a voting trust or similar agreement, except as noted. To our knowledge, there is no arrangement, including any pledge by any person of securities of the Company, the operation of which may at a subsequent date result in a change in control of the Company.

| Name and Address of Beneficial Owner | Title | Beneficially Owned | Percent of Class Before Offering | Percent of Class After Offering |
|---|---|---|---|---|
| **Officers and Directors** | | | | |
| Jonathan Rosen | Chief Executive Officer | — | — | — |
| Kevin F. Pickard | Chief Financial Officer and Director | 300,000 | 1.1% | 1.0% |
| Laurie DiGiovanni | Chief Operating Officer | | | |
| Jeffrey J. Guzy | Director | — | — | — |
| Christopher Miglino | Director | — | — | — |
| Harbant S. Sidhu | Director | — | — | — |
| Paul Richter | Director | — | — | — |
| **Officers and Directors as a Group (total of 7 persons)** | | 300,000 | 1.1% | 1.0% |
| **5% Stockholders** | | | | |
| X, LLC | | 2,900,000 | 10.8% | 9.9% |

- 8 -

| Gray Mars Venus Trust, Arizona 2015 | 10,325,000 | 38.5% | 35.2% |
| Bellridge Capital, L.P. | 2,400,000 | 8.5% | 7.8% |
| David Haley | 2,844,945 | 10.6% | 9.7% |
| James Malackowski | 2,758,824 | 10.3% | 9.4% |
| John O'Hurley | 2,018,750 | 7.5% | 6.9% |
| Acuitas Group Holdings, LLC | 1,654,412 | 6.2% | 5.7% |

\*        \*        \*

### Sale of Founder's Shares and Voting Trust

As a condition to approving the Company's common stock for listing on The Nasdaq Capital Market, X, LLC, an entity that is wholly-owned and controlled by Ramy El-Batrawi, our founder and former Chief Executive Officer and former director, agreed to sell 12,525,000 of its 15,425,000 shares of common stock. *The 12,525,000 shares (the "Private Shares") were sold* pursuant to an exemption from registration to four existing Company shareholders who qualify as accredited investors (as that term is defined in Securities Act Rule 501(a)). *The Private Shares were sold at $3.00 per share* in exchange for non-recourse, non-interest-bearing promissory notes with maturities ranging from one year to eighteen months. *As a result of the sale, X, LLC's beneficial ownership shall be reduced to 9.9% of the shares outstanding after the completion of this Offering.* We will not receive any proceeds from the sale of the Private Shares. *If the offering contemplated by this registration statement is not consummated by January 31, 2020, the parties have agreed to unwind the sale of the Private Shares transaction in compliance with applicable law.* Mr. El-Batrawi has also entered into a Voting Trust Agreement (the "Trust") pursuant to which the voting power of all of his remaining 2,900,000 shares of common stock will be controlled by a trustee who will use the voting power of the common stock held in the Trust to vote on all matters presented for a vote of stockholders in the same proportion that the shares of common stock not subject to the Trust voted on such matters.

(Footnotes omitted.)

21.    Concerning the "Use of Proceeds" from the IPO, Registration Statement stated in pertinent part as follows:

*We currently intend to use the net proceeds to us from this primary offering to purchase vehicles to add to our fleet of passenger vehicles made available for rent through our wholly-owned subsidiary, Distinct Cars, and for general corporate purposes, including working capital and sales and marketing activities.*

\*        \*        \*

The principal purposes of this primary offering are to increase our capitalization and financial flexibility, increase our visibility in the marketplace and create a public market for our common stock. As of the date of this prospectus, we cannot specify with certainty all of the particular uses for the net proceeds to us from this primary offering. However, we currently intend to use the net proceeds to us from this primary offering to add to our fleet of passenger vehicles made available for rent through the Company's wholly-owned subsidiary, Distinct Cars, and for general corporate purposes, including working capital, sales and marketing activities. We may also use a portion of the net proceeds for the acquisition of, or investment in, technologies, solutions or businesses

- 9 -

that complement our business, although we have no present commitments or agreements to enter into any acquisitions or investments.

\*      \*      \*

The table below sets forth the manner in which we expect to use the net proceeds we receive from this primary offering.  All amounts included in the table below are estimates.

| Description | Amount |
| --- | --- |
| Purchase of Passenger Vehicles Made Available for Rent | $5,000,000 |
| Repayment of Notes Payable | $2,400,000 |
| Sales and Marketing | $700,000 |
| Working Capital and General Corporate Purposes | $693,800 |
| Total | $8,793,800 |

22.    Concerning Anthony Davis, a former President, CEO and director of YayYo, the Registration Statement stated in pertinent part as follows:

- Anthony Davis was the "Former President, Chief Executive Officer, [and a] Director" of YayYo, having served in those capacities between 2017 and 2018 and been paid $20,000 in salary;

- That, "[o]n December 1, 2016. . . . Mr. Davis . . . received non-qualified stock options expiring on December 31, 2018, entitling [him] to purchase 100,000 shares of Company common stock at an exercise price of $1.00 per share at any time on or after June 1, 2017"; and

- That, "[o]n November 29, 2016, the Company and Mr. Davis, a former executive officer of the Company, entered into an offer of employment agreement with the Company setting forth an initial base salary for Mr. Davis's first three months of service and performance under his term of employment with the Company.  As set forth under the employment offer, Mr. Davis was entitled to receive (i) $15,000 for his service in the month of December 2016, (ii) $10,000 for service performed during the month of January, 2017 and an additional $10,000 for service performed by Mr. Davis during the month of February 2017."

23.    Concerning YayYo's relationship with a social media company called Social Reality, and that company's provision of social media services to YayYo prior to the IPO, while the Registration Statement did disclose that defendant Miglino was the founder and CEO of Social Reality, rather than disclose that YayYo then owed Social Reality $426,286 for pre-IPO services at the time of the IPO, the

- 10 -

1    Registration Statement stated that. "[d]uring the year ended December 31, 2018, the Company incurred

2    $334,471 for advertising and digital media services from Social Reality" and that "[a]t December 31,

3    2018, the Company had an amount due of $334,471 to Social Reality." In addition to failing to disclose

4    the full amount owed to Social Reality at the time of the IPO, the Registration Statement failed to

5    disclose that the debt was then overdue and that YayYo had been delaying making the payment while it

6    carried out its IPO.

7        24.    The statements referenced above in ¶¶18-23 were each materially false and misleading

8    because they failed to disclose and misrepresented the following adverse facts that existed at the time of

9    the IPO:

10           (a)    defendant El-Batrawi continued, directly and/or indirectly, to exercise

11   supervision. authority and control over YayYo, and was intimately involved, on a day-to-day basis, with

12   the business, operations and finances of the Company, including assisting the Underwriter Defendants

13   in marketing YayYo's IPO from defendant WestPark's offices in Los Angeles;

14           (b)    defendant El-Batrawi never sold the 12,525,000 "Private Shares" and continued

15   to own a controlling interest in YayYo despite the NASDAQ's insistence that he retain less than a 10%

16   equity ownership interest in connection with the listing agreement;

17           (c)    defendants had promised certain creditors of YayYo that in exchange for their

18   agreeing to purchase shares in the IPO (in order to permit the Underwriter Defendants to close the IPO),

19   YayYo would repurchase those shares from them after the IPO using proceeds from the IPO;

20           (d)    defendants intended to repurchase shares purchased by creditors of YayYo in the

21   IPO using IPO proceeds;

22           (e)    YayYo owed former President, CEO and director Anthony Davis half a million

23   dollars at the time of the IPO: and

24           (f)    YayYo owed Social Reality $426.286 in unpaid social media costs. most of

25   which were more than a year overdue, and payment had been delayed while YayYo attempted to

26   complete the IPO.

27        25.    The IPO was successful for the Company and the Underwriter Defendants. who sold

28   2.625.000 shares of YayYo common stock to the public at $4 per share, raising approximately $10.5

1  million in gross proceeds for the Company ($9.66 million in net proceeds from the IPO after deducting

2  underwriting discounts, commissions and offering costs).

3        26.    On January 6, 2020, YayYo suddenly announced the appointment of Boyd Bishop as

4  President of YayYo effective January 6, 2020.

5        27.    On January 13, 2020, YayYo filed a Current Report with the SEC on Form 8-K

6  announcing that, "[o]n January 10, 2020, YayYo . . . entered into an Executive Employment Agreement

7  . . . with the Company's Chief Executive Officer, Jonathan Rosen, pursuant to which Mr. Rosen will

8  continue to serve as the Company's Chief Executive Officer for one year or until terminated in

9  accordance with the Agreement."

10       28.    On January 24, 2020, YayYo filed an action for declaratory judgment and a permanent

11 injunction against defendant El-Batrawi in Los Angeles County Superior Court, alleging in pertinent

12 part as follows:

13        Despite leaving the Company following concerns from NASDAQ regarding his
          involvement in the day-to-day operations of YayYo in September 2019, Defendant has
14        engaged in a continuous course of actions misrepresenting himself as affiliated with,
          speaking on behalf of, and authorized or empowered by Yay Yo.  In so doing,
15        Defendant has purported to bind the Company to contracts, direct its employees, change
          its website, and even to attempted to [sic] sell the Company to its competitors.
16

17 Complaint ¶2, *YayYo, Inc. v. El-Batrawi*, No. 20STCP00309 (Los Angeles Cnty. Super. Ct., filed Jan.

18 24, 2020).

19       29.    In a declaration filed with the complaint and in support of a temporary restraining order,

20 defendant Rosen testified that, despite El-Batrawi having promised in September 2019 in connection

21 with his resignation to have "***no formal or informal affiliation between the Company and [El-***

22 ***Batrawi].*** expect [sic] for [his] minority ownership (less than 10%) in the Company,'" defendant El-

23 Batrawi had "continue[d] to operate and hold himself out as if a director or officer of YayYo, or as an

24 otherwise authorized representative of the same."  Defendant Rosen further testified that despite the

25 Registration Statement having expressly stated that defendant El-Batrawi had already sold the

26 12,525,000 YayYo shares prior to the IPO, in reality, "Defendant El-Batrawi ha[d] failed and/or refused

27 to sell his shares of stock in the Company."  Defendant Rosen further admitted this had all been going

28 on since September 2019, well before the IPO, including testifying in pertinent part that, "[s]ince

- 12 -

1  [September 2019]. Defendant El-Batrawi has engaged in a continuous and escalating pattern of

2  behavior destructive to YayYo." Defendant Rosen testified that defendant El-Batrawi's misconduct

3  between September 2019 and January 2020 had included, among other things, contacting competitors,

4  suppliers and vendors of YayYo and negotiating with them as a representative of YayYo; meeting with

5  financiers and investment firms about investing in YayYo and claiming to represent YayYo; hiring a

6  public relations firm for YayYo and producing and airing commercials for YayYo on the Fox Business

7  Channel; attempting to hire two marketing firms for YayYo; and directing that changes be made to

8  YayYo's website.[2]

9       30.    On January 27, 2020, YayYo filed a Current Report on Form 8-K with the SEC

10  announcing that defendants Guzy, Miglino and Richter had been replaced as Board members and that

11  defendant Rosen was no longer the CEO of YayYo. The Form 8-K stated in pertinent part as follows:

> By the written consent of the holders of more than a majority of the shares of YayYo, Inc. (the "Company") then entitled to vote at an election of directors, Messrs. Jeffrey J. Guzy, Christopher Miglino and Paul Richter were removed as directors of the Company, effective January 22, 2020. On January 24, 2020, the remaining directors of the Company elected Douglas M. Mox, John P. O'Neill and Stephen M. Sanchez as directors to fill such vacancies, each to hold office until the earlier of the expiration of the term of office of the director whom he has replaced, a successor is duly elected and qualified or the earlier of such director's death, resignation, disqualification or removal. Stephen M. Sanchez was elected as the Chairman of the Board of Directors (the "Board").
>
>              *      *      *
>
> In addition to the above, on January 26, 2020, Jonathan Rosen resigned from his position as the Company's Chief Executive Officer. Mr. Rosen informed the Board that his resignation was for "Good Reason," as that term is defined in Mr. Rosen's employment agreement with the Company dated January 10, 2020. The Company disagrees with Mr. Rosen's characterization of the circumstances surrounding his resignation and does not believe that "Good Reason" exists for Mr. Rosen's resignation.

22       31.    On February 10, 2020, YayYo issued a press release disclosing that the new Board had

23  determined to delist YayYo common stock from the NASDAQ to avoid the NASDAQ's listing

24  requirements, stating in pertinent part as follows:

> YayYo . . . today announced its intention to voluntarily delist its common stock from the NASDAQ Stock Market ("NASDAQ") effective on February 20, 2020. The Company expects that its common stock will be approved for quotation on the OTCQB from and

---

[2]  Declaration of Jonathan Rosen ¶¶7-10, *YayYo, Inc. v. El-Batrawi*, No. 20STCP00309 (Los Angeles Cnty. Super. Ct., filed Jan. 24, 2020) (emphasis in original).

after that date. The Company has elected to effect the voluntary delisting of its common stock after discussions with NASDAQ's staff and based on the determination of the Company's board of directors that voluntarily delisting the common stock from the NASDAQ is in the best interests of the Company and its stockholders. Nasdaq has advised the Company that it believes that the Company has failed the conditions for continued listing of its common stock set forth in Listing Rule 5250(a). The voluntary delisting will permit the Company to operate its business free from restrictions imposed by NASDAQ rules and the conditions applicable to the listing of the Company's common stock on the NASDAQ.

The Company has notified NASDAQ of its intent to voluntarily delist its common stock from the NASDAQ. The Company currently anticipates that it will file with the Securities and Exchange Commission a Form 25 relating to the delisting of its common stock on or about February 20, 2020 and expects the delisting of its common stock to be effective ten days thereafter. The purpose of the Form 25 filing is to effect the voluntary delisting from the NASDAQ of the Company's outstanding common stock. The Company does not expect the delisting to have any adverse effects on its business operations.

32.    On February 11, 2020, Social Reality filed an action against YayYo in Los Angeles Superior Court alleging that it had provided media services to the Company dating back to 2018 and claiming breach of contract and related causes of action. Social Reality alleged that YayYo then owed it $645,286, including $426,286 for services rendered prior to time of the IPO. In its complaint, Social Reality expressly alleged that YayYo had claimed to be "unable to pay" for the services prior to the IPO "apparently due to a delay in its [IPO]."[3] Though the invoices for the services attached to the complaint filed by Social Reality were signed by defendant El-Batrawi, an email attached to the complaint dated January 24, 2020 from defendant Rosen stated that other than $50,000 that had apparently been paid to Social Reality from the IPO proceeds on January 23, 2020, YayYo would be unable to pay the rest of the outstanding bill until it obtained additional outside financing. *Id.* Ex. C.

33.    On March 3, 2020, YayYo filed a Current Report on Form 8-K with the SEC disclosing that, "[o]n February 28, 2020, the Board of Directors . . . of YayYo . . . appointed Ramy El-Batrawi as the Company's Chief Executive Officer and as a member of the Board, effective immediately." The Form 8-K further disclosed that, "[b]eginning on February 1, 2019, the Company entered into a consulting agreement with Mr. El-Batrawi and paid $167,000 under the consulting agreement," but that "[t]he consulting agreement was terminated effective September 1, 2019."

---

[3]   Complaint at 2, *Social Reality, Inc. v. YayYo, Inc.*, No. 20STCV05559 (Los Angeles Cnty. Super. Ct., filed Feb. 11, 2020).

34.     On March 5, 2020, former YayYo President, CEO and director Anthony Davis filed a Complaint for Damages, Declaratory Relief, Failure to Pay Wages in Violation of Labor Code §201, et. seq., Violation of California's Unfair Competition Laws (Business & Professions Code §17200, et seq.), Breach of Contract, Intentional Misrepresentation and Fraud, and Promissory Fraud against YayYo and El-Batrawi, alleging in pertinent part as follows:

1.     Plaintiff Anthony Davis is an experienced, c-suite level executive that agreed to join Yayyo, a ridesharing startup company, as its CEO, for a salary well below his market rate in exchange for the written promise of stock options made by Yayyo founder and then CEO Ramy El-Batrawi.

2.     After only five (5) months of service and in accordance with his responsibilities under an employment agreement, Plaintiff determined that Ramy El-Batrawi could not be trusted because he regularly ignored legal counsel regarding SEC matters and flouted Board protocols and industry norms for corporate compliance. Specifically, El-Batrawi filed fraudulent and materially misleading documents with the SEC that Yayyo continues to use to deny plaintiff the compensation he is owed.

3.     Instead of remaining in an untenable position due to El-Batrawi's illegal and fraudulent conduct, plaintiff negotiated a separation written agreement through a consulting agreement that described the agreed upon compensation owed to Plaintiff, including specific language regarding payment from the stock options and other cash owed. To date, despite numerous good faith attempts to be paid pursuant to the written agreements, Yayyo refuses to honor its obligations thereunder.

                            *        *        *

37.     Based on the written agreements, Yayyo and El-Batrawi caused damages to Davis in the amount of at least $454,086.39 for losses related to cash compensation, expenses and the stock options value, plus attorney's fees and costs. Plaintiff also seeks injunctive relief requiring Yayyo to amend the SEC filings (Form S-1/A) so as to not mislead the public[.][4]

35.     On or about April 13, 2020, the Company filed a Current Report on Form 8-K with the SEC disclosing that, as of April 2, 2020, YayYo had provided a "secured" position on "all of the assets" of YayYo and its subsidiaries to X, LLC, an entity owned and/or controlled by defendant El-Batrawi, for a loan of just $150,000, which debt is due and payable 30 days thereafter, demonstrating the virtually complete dissipation of the proceeds of the IPO by the Company.

---

[4]   Complaint ¶¶1-3, 37. *Davis v. YayYo, Inc., et al.*, No. 20STCT09143 (Los Angeles Cnty. Super Ct., filed Mar. 5, 2020) (emphasis in original).

36.     On or about April 28, 2020, an entity named FirstFire Global Opportunities Fund, LLC ("FirstFire") filed a complaint against the Underwriter Defendants in the U.S. District Court for the Southern District of New York.  Among other things, FirstFire alleges that the Registration Statement used to conduct the IPO was materially false and misleading because it concealed defendant El-Batrawi's ongoing control over the Company and its IPO process and the fraudulent use of IPO proceeds to immediately pay back investors who fronted funds to close the IPO.  FirstFire further alleges that when the Underwriter Defendants were unable to raise the full $10 million required by NASDAQ to close the IPO, defendant El-Batrawi fabricated a $1.2 million commitment, purportedly from a trust, which turned out to be a lie.[5]  FirstFire further alleges that the Underwriter Defendants and defendant El-Batrawi solicited creditors and shareholders to invest more money to close the IPO, and "sought to sweeten the attraction" by agreeing that YayYo would "'immediately'" pay them back from the IPO proceeds, an unlawful act that would "materially misrepresent the Offering and fraudulently mislead investors," according to FirstFire's complaint.  *Id.* ¶¶49, 51.  FirstFire further alleges that the Underwriter Defendants told investors that YayYo planned to use the IPO proceeds to purchase vehicles, as well as for general corporate purposes, including working capital and sales and marketing activities, but that in reality the Company had no intention of doing so.  *Id.* ¶24.

37.     Following its delisting, as of the filing of this complaint, the price of YayYo common stock has plummeted and the stock now trades at less than $0.30 per share, a ***nearly 100% decline*** from the price the stock was offered at in the IPO.

## CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this action as a class action on behalf of all purchasers of YayYo common stock pursuant to the Registration Statement issued in connection with the IPO (the "Class"). Excluded from the Class are defendants and their families, the officers and directors and affiliates of defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which defendants have or had a controlling interest.

---

[5]   Complaint ¶¶38-49, *FirstFire Global Opportunities Fund, LLC v. WestPack Capital, Inc., et al.*, No. 20-cv-3327 (S.D.N.Y., filed Apr. 28, 2020).

39.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by YayYo or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

40.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

41.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

42.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether defendants violated the 1933 Act;

(b)     whether statements made by defendants to the investing public in the Registration Statement misrepresented material facts about the business and operations of YayYo; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

43.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

**FIRST CAUSE OF ACTION**

**For Violation of §11 of the 1933 Act**
**Against All Defendants (Except El-Batrawi)**

44.     Plaintiff incorporates ¶¶1-43 by reference.

- 17 -

45.     This Cause of Action is brought pursuant to §11 of the 1933 Act, 15 U.S.C. §77k, on behalf of the Class, against all defendants except defendant El-Batrawi.

46.     The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material fact, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

47.     YayYo is strictly liable to plaintiff and the Class for the misstatements and omissions.

48.     None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omission of any material facts and were not misleading.

49.     By reason of the conduct herein alleged, each defendant named in this Cause of Action violated, and/or controlled a person who violated, §11 of the 1933 Act.

50.     Plaintiff acquired YayYo common stock traceable to the IPO.

51.     Plaintiff and the Class have sustained damages. The value of YayYo common stock has declined substantially subsequent to and due to defendants' violations.

52.     At the time of their purchases of YayYo common stock, plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein. Less than one year has elapsed from the time that plaintiff discovered or reasonably could have discovered the facts upon which this complaint is based to the time that plaintiff commenced this action. Less than three years has elapsed between the time that the securities upon which this Cause of Action is brought were offered to the public and the time plaintiff commenced this action.

## SECOND CAUSE OF ACTION

### For Violation of §15 of the 1933 Act
### Against the Company and the Individual Defendants

53.     Plaintiff incorporates ¶¶1-52 by reference.

54.     This Cause of Action is brought pursuant to §15 of the 1933 Act, 15 U.S.C. §77o, against the Company and the Individual Defendants.

55.     The Individual Defendants were each control persons of YayYo by virtue of their positions as directors and/or senior officers of YayYo, or in the case of defendant El-Batrawi, as a behind the scenes orchestrator.  The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of YayYo.  The Company controlled the Individual Defendants and all of YayYo's employees.

56.     The Individual Defendants each were culpable participants in the violation of §11 of the 1933 Act alleged in the Cause of Action above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process which allowed the IPO to be successfully completed.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action, certifying plaintiff as a Class representative under the California Rules of Court and Rules of Civil Procedure, and plaintiff's counsel as Class counsel;

B.     Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.     Such equitable/injunctive or other relief as deemed appropriate by the Court.

## JURY DEMAND

Plaintiff hereby demand a trial by jury.

DATED: July 22, 2020                         ROBBINS GELLER RUDMAN
                                             & DOWD LLP
                                             JAMES I. JACONETTE

                                             _____
                                                    JAMES I. JACONETTE

1

2    655 West Broadway, Suite 1900
     San Diego, CA  92101
3    Telephone: 619/231-1058
     619/231-7423 (fax)
4    iamesi@rgrdlaw.com

5    ROBBINS GELLER RUDMAN
       & DOWD LLP
6    SAMUEL H. RUDMAN
     MARY K. BLASY
7    58 South Service Road, Suite 200
     Melville, New York 11747
8    Telephone: 631/367-7100
     631/367-1173 (fax)
9    srudman@rgrdlaw.com
     mblasy@rgrdlaw.com

10   Attorneys for Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS



# Superior Court of California, County of Los Angeles

> # ALTERNATIVE DISPUTE RESOLUTION (ADR)
> # INFORMATION PACKAGE
>
> **THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**
>
> **CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

## What is ADR?

ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration, and settlement conferences. When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR). These alternatives to litigation and trial are described below.

## Advantages of ADR

- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control** (with the parties): Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

## Disadvantages of ADR

- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR and litigation and trial.
- **No Public Trial:** ADR does not provide a public trial or a decision by a judge or jury.

## Main Types of ADR:

1. **Negotiation:** Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:** In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all. Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   **Mediation may <u>not</u> be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

LASC CIV 271 Rev. 01/20
For Mandatory Use

---

### How to arrange mediation in Los Angeles County

Mediation for civil cases is voluntary and parties may select any mediator they wish. Options include:

a. **The Civil Mediation Vendor Resource List**
   If all parties agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases):

   - **ADR Services, Inc.** Case Manager patricia@adrservices.com (310) 201-0010 (Ext. 261)
   - **JAMS, Inc.** Senior Case Manager mbinder@jamsadr.com (310) 309-6204
   - **Mediation Center of Los Angeles (MCLA)** Program Manager info@mediationLA.org (833) 476-9145
     - Only MCLA provides mediation in person, by phone and by videoconference.

   **These organizations cannot accept every case and they may decline cases at their discretion.**
   Visit www.lacourt.org/ADR.Res.List for important information and FAQs before contacting them.
   NOTE: This program does not accept family law, probate, or small claims cases.

b. **Los Angeles County Dispute Resolution Programs**
   https://wdacs.lacounty.gov/programs/drp/
   - Small claims, unlawful detainers (evictions) and, at the Spring Street Courthouse, limited civil:
     - Free, day- of- trial mediations at the courthouse. No appointment needed.
     - Free or low-cost mediations before the day of trial.
     - For free or low-cost Online Dispute Resolution (ODR) by phone or computer before the day of trial visit
       http://www.lacourt.org/division/smallclaims/pdf/OnlineDisputeResolutionFlyer-EngSpan.pdf

c. **Mediators and ADR and Bar organizations** that provide mediation may be found on the internet.

---

3. **Arbitration**: Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit  http://www.courts.ca.gov/programs-adr.htm

4. **Mandatory Settlement Conferences (MSC):**  MSCs are ordered by the Court and are often held close to the trial date or on the day of trial.  The parties and their attorneys meet with a judge or settlement officer who does not make a decision but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement.  For information about the Court's MSC programs for civil cases, visit http://www.lacourt.org/division/civil/CI0047.aspx

**Los Angeles Superior Court ADR website:  http://www.lacourt.org/division/civil/CI0109.aspx**
**For general information and videos about ADR, visit** http://www.courts.ca.gov/programs-adr.htm

LASC CIV 271 Rev. 01/20
For Mandatory Use

# VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

**◆Los Angeles County Bar Association Litigation Section◆**

**◆ Los Angeles County Bar Association
Labor and Employment Law Section◆**

**◆Consumer Attorneys Association of Los Angeles◆**

**◆Southern California Defense Counsel◆**

**◆Association of Business Trial Lawyers◆**

**◆California Employment Lawyers Association◆**

LACIV 230 (NEW)
LASC Approved 4-11
For Optional Use

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:             FAX NO. (Optional): | | |
| E-MAIL ADDRESS (Optional): | | |
| ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – DISCOVERY RESOLUTION** | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii. Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i. Also be filed on the approved form (copy attached);

      ii. Include a brief summary of why the requested relief should be denied;

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

iii.   Be filed within two (2) court days of receipt of the Request; and

iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

c.   No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

d.   If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied.  If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

e.   If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.   If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.   The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.   Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.   Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.   References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date:

_____       ➤ _____
　　　　(TYPE OR PRINT NAME)　　　　　　　　　　　　　　(ATTORNEY FOR PLAINTIFF)

Date:

_____       ➤ _____
　　　　(TYPE OR PRINT NAME)　　　　　　　　　　　　　　(ATTORNEY FOR DEFENDANT)

Date:

_____       ➤ _____
　　　　(TYPE OR PRINT NAME)　　　　　　　　　　　　　　(ATTORNEY FOR DEFENDANT)

Date:

_____       ➤ _____
　　　　(TYPE OR PRINT NAME)　　　　　　　　　　　　　　(ATTORNEY FOR DEFENDANT)

Date:

_____       ➤ _____
　　　　(TYPE OR PRINT NAME)　　　　　　　　(ATTORNEY FOR _____)

Date:

_____       ➤ _____
　　　　(TYPE OR PRINT NAME)　　　　　　　　(ATTORNEY FOR _____)

Date:

_____       ➤ _____
　　　　(TYPE OR PRINT NAME)　　　　　　　　(ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – EARLY ORGANIZATIONAL MEETING** | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

**STIPULATION – EARLY ORGANIZATIONAL MEETING**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h.  Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i.  Whether the case is suitable for the Expedited Jury Trial procedures (see information at **www.lacourt.org** under "*Civil*" and then under "*General Information*").

2.  The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
    (INSERT DATE)                                           (INSERT DATE)
    complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3.  The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____          ➤ _____
        (TYPE OR PRINT NAME)                              (ATTORNEY FOR PLAINTIFF)
Date:

_____          ➤ _____
        (TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)
Date:

_____          ➤ _____
        (TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)
Date:

_____          ➤ _____
        (TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)
Date:

_____          ➤ _____
        (TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)
Date:

_____          ➤ _____
        (TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)
Date:

_____          ➤ _____
        (TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:                    FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:

   ☐  Request for Informal Discovery Conference
   ☐  Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, _briefly_ describe the nature of the discovery dispute, including the facts and legal arguments at issue.  For an Answer to Request for Informal Discovery Conference, _briefly_ describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

---

LACIV 094 (new)
LASC Approved 04/11
For Optional Use

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION AND ORDER – MOTIONS IN LIMINE** | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

---

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

## The following parties stipulate:

Date:

_____

(TYPE OR PRINT NAME)

Date:

_____

(TYPE OR PRINT NAME)

Date:

_____

(TYPE OR PRINT NAME)

Date:

_____

(TYPE OR PRINT NAME)

Date:

_____

(TYPE OR PRINT NAME)

Date:

_____

(TYPE OR PRINT NAME)

Date:

_____

(TYPE OR PRINT NAME)

➢ _____

(ATTORNEY FOR PLAINTIFF)

➢ _____

(ATTORNEY FOR DEFENDANT)

➢ _____

(ATTORNEY FOR DEFENDANT)

➢ _____

(ATTORNEY FOR DEFENDANT)

➢ _____

(ATTORNEY FOR _____)

➢ _____

(ATTORNEY FOR _____)

➢ _____

(ATTORNEY FOR _____)

## THE COURT SO ORDERS.

Date:   _____

_____

JUDICIAL OFFICER